UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

UNITED STATES OF AMERICA,

PLAINTIFF,

No. 07-CR-35-GFVT

Pikeville, Kentucky
June 23, 2008
3:24 p.m.

VS.

RANDALL CLINTON THOMPSON,
JOHN MAC COMBS,
PHILLIP G. CHAMPION,
RONNIE ADAMS,

DEFENDANTS.

PARTIAL TRANSCRIPT OF JURY TRIAL
TESTIMONY OF EDMOND BOWLING

* * * * * * * * * *

APPEARANCES:

For the Plaintiff:

Hon. Kenneth Taylor
110 West Vine Street
Suite 400
Lexington, Kentucky 40507-1671
(859) 233-2661

For the Defendant
Randall Clinton Thompson:

Hon. R. Kent Westberry
Hon. Kristin N. Logan
Landrum & Shouse, LLP
220 West Main Street
Suite 1900
Louisville, Kentucky 40202-1395
(502) 589-7616

Hon. Terry D. Jacobs
P. O. Box 991
Hindman, Kentucky 41822
(606) 785-9876

APPEARANCES (Cont.)

For the Defendant John Mac Combs:

Hon. Lawrence R. Webster
163 Main Street
Suite 2
Pikeville, Kentucky 41502
(606) 437-4029

For the Defendant Phillip G. Champion:

Hon. Thomas L. Jensen
Jensen, Cessna, Benge & Webster
303 South Main Street
London, Kentucky 40741
(606) 878-8845

For the Defendant Ronnie Adams:

Hon. Jason E. Williams
111 West 5th Street
London, Kentucky 40743-3199
(606) 877-5291

Court Reporter:

Sandy C. Wilder, RMR, CSR (IL)
8081 Perryville Road
Danville, Kentucky 40423-9713
(859) 516-4114
wildercaptions@kywimax.com

INDEX

Direct Examination of EDMOND BOWLING
By: Mr. Williams 4-13

Cross-examination
By: Mr. Taylor 13-15

Reporter's Certificate 17

[IN OPEN COURT]

THE COURT: You may be finally excused, and we'll take that and give this to the courtroom deputy. And the defendants may call their next witness.

MR. WESTBERRY: May we have just a second, just a moment?

THE COURT: Certainly.

MR. WESTBERRY: Jason, who do we have next?

MR. WILLIAMS: Your Honor, Edmond Bowling.

THE COURT: Mr. Edmond Bowling.

MR. WILLIAMS: Bowling, Your Honor, I'm sorry. I read the writing wrong.

[WITNESS SWORN]

DIRECT EXAMINATION

BY: MR. WILLIAMS:

Q. Good afternoon, sir.

A. Good afternoon.

Q. Sir, would you state your full name for the record, please?

A. My name is Edmond E. Bowling.

Q. Mr. Bowling, can you hear me okay?

A. Yes.

Q. Sir, what's your address?
A. 110 Buckeye Branch, Pine Top.
Q. And, sir, how long have you lived on Buckeye Branch?
A. Well, I've lived there a long time, but I -- probably 20 years.
Q. And are you married, sir?
THE WITNESS: Pardon?
Q. Are you married?
A. Yes.
Q. Does your wife live there on the road with you?
A. Yes.
Q. Buckeye Branch, what part of the county is that in?
A. That's near Carr Creek. That would be around the lake.
Q. Around the lake?
A. Yes.
Q. Now, have you lived on Buckeye Branch all those years?
A. Yes, yes.
Q. And can you describe the road for the jury, sir, what kind of road is Buckeye Branch?

A. Well, it's a -- the road is just right off of the main highway, and it's up to our house. We live behind the home place, which is about an eighth of a mile. You can't get any up a road. There's no road above us.

Q. What's the main highway Buckeye Branch branches off of?

A. 582.

Q. Now, to get into your place, is there a bridge that you have to cross?

A. Yes, yes.

Q. And when did that bridge come into existence, if you know?

A. It came into existence the third month of '04.

Q. All right. And was there bridge there before that time?

A. Yes, sir.

Q. And what kind of bridge was it before '04?

A. It was a wood bridge.

Q. Do you know who constructed the bridge to begin with, sir?

A. Yes. Mr. Watts built the bridge himself.

Q. Do you know how long ago it was built?

A. Oh, that's -- I've been in the family 50 some years, so that's beyond that.

Q. Prior to '04, had the county maintained that bridge?

A. Well, that's a good question. The county has maintained it to a certain extent. My father-in-law was a politician, so -- he was a smart politician. He never let anybody buy any wood to put on his bridge, and he didn't take any gravels, and so he didn't open himself for any political endeavors. So then after he died, we paid taxes, we did that, so we asked for some gravels to be put on the bridge, and they started putting on the gravels and maintaining it.

Q. About when was that, sir?

A. Fifteen (15), 15 years ago.

Q. All right. And do you remember what administration it was that did that, 15 or so years ago?

THE WITNESS: What did you say? Ask that ...

Q. Do you remember who was county

judge back 15 years ago?

A. It would be -- I can't remember that right -- name some of the judges. I don't know. Somebody will have to help me there.

Q. You're sure, sir, it was about 15 years ago?

A. Yes, oh, yes.

MR. WILLIAMS: Now, I'd like to show you a picture, if I may. May this be given to the witness, Your Honor?

THE COURT: Yes.

A. Yeah, that's the bridge and we live in behind the main house there.

Q. Is that a fair and accurate portrayal of the area where you live, sir?

A. Yes.

MR. WILLIAMS: Sir, we'd ask that that be -- or, Your Honor, we'd ask that that be made a Defendant's exhibit and published to the jury.

THE COURT: Is there objection?

MR. TAYLOR: I haven't seen it.

THE COURT: Just tender it to counsel for the Government so he can review it. Is

there objection, counsel?

MR. TAYLOR: No objection.

THE COURT: Without objection, it will be entered as a Defendant's exhibit, and it may be published to the jury.

Q. Sir, could you go ahead and hold the picture up for us, please. Now, there's a truck crossing the bridge in that photograph, isn't it, sir?

A. Yes.

Q. And if you kept on driving that way, is that where you live?

A. Yes, right here.

Q. How many houses are back up in that area?

A. No other house except there was -- there were four or five houses years ago.

Q. All right. And in the photograph is the bridge that you see, does it have a concrete surface?

A. Yes.

Q. And do you know when that surface came to be on the bridge?

A. Well, the surface was done -- we personally -- some of us have -- you're

talking about the landscaping of the road up to my house?

Q. No, sir, I'm asking you. The concrete surface on the bridge, when was it concreted?

A. When was it? It's the third month of '04 is when the concrete was put on this bridge.

Q. All right. And that would have been -- do you know whose administration that was, Your Honor -- or sir?

A. Yes, it was Newsome's.

Q. All right. Now, do you know whether or not that date is displayed anywhere on the bridge?

A. Where the date was, yes, sir, right here, right here. Just when you turn off to the house, the date's on it, the 3-3. I forget -- I don't know -- I forget about the 18th or what, but I know I prayed for it for four years to get a bridge, so I was very happy when it came.

MR. WILLIAMS: Your Honor, may I show this to the witness?

THE COURT: You may.

Q. Sir, does that photograph look familiar to you at all?

A. Yeah, that's it. That's it, uh-huh.

Q. Can you tell the jury -- or is that a fair and accurate portrayal of the inscription on the bridge?

A. Yes.

MR. WILLIAMS: And, Your Honor, may we make that a Defendant's Exhibit numbered exhibit?

THE COURT: Is there objection?

MR. TAYLOR: No objection.

THE COURT: Without objection, it will become a Defendant's exhibit.

Q. Could you read to the jury what the date is on that bridge?

A. 3-22-04.

MR. WILLIAMS: All right. May the jury be shown that exhibit?

THE COURT: You may publish that to the jury. You can either pass it amongst the juries or hold it up to them so they can see it.

A. Okay. I was there the day they

put it on.

Q. And who carved those initials into the bridge?

A. I assume that the foreman did that, Mr. Bentley.

Q. Was that Harold Dean Bentley?

A. No. You'll have to come with another name.

MR. WILLIAMS: I don't know any other Bentley, sir.

A. I don't know. He was the foreman under Newsome.

Q. Dean Bentley perhaps?

A. No. That's not his name, is it? Is that his name, first name? If it is, I mean -- yeah, Bentley, last name, yes, sir.

Q. Now, do you recall, had there been any damage to that bridge before, sir?

THE WITNESS: Now, what is that, relating to the bridge you're talking about?

Q. Was there any prior incidence involving a garbage truck to the bridge?

A. Yeah, a garbage truck did -- it would be very -- it would be hard for a truck with any weight or something to come across

that bridge because the damage was done by the garbage truck before that, yes, sir.

Q. Did the concrete make it a safer entrance for the area?

A. Oh, yes. In fact, they had blocks just stuck up to try to hold a little foundation under that bridge, yes.

MR. WILLIAMS: That's all the questions I have, sir. Thank you.

THE COURT: Let me see if there are other defendants that would like to question this witness on direct? Mr. Taylor, cross-examination.

CROSS-EXAMINATION

BY: MR. TAYLOR:

Q. Mr. Bowling, you indicated that the original bridge was built by a private citizen by the name of Watts?

A. Yes, he built the bridge.

Q. And he built that using his own labor and his own funds?

A. Well, he built the bridge, but always, as I told you before, it was a wood bridge after they did it, and he always bought the wood, but the county put it on. The

county, in a sense, has helped maintain the bridge all this time, yes.

Q. And he didn't want the county to buy the wood because he didn't want to be accused of having --

A. He didn't want any political ambush, like perhaps today.

Q. Do you know all the evidence in this case, sir?

THE WITNESS: Pardon?

Q. Are you familiar with all of the evidence in this case?

THE WITNESS: What evidence are you talking about?

Q. Well, the evidence that this jury has heard.

A. I'm not quite understanding what you're saying.

Q. Sir, do you believe that it's okay for the county to put county property on private property?

A. Well, when the county has established rules in the past and the other --

Q. Can you show me where those rules are written?

A. No, it's just the things that people do, I guess.

Q. Uh-huh. And sometimes habits get developed that aren't legal; isn't that true?

A. You'll have to -- I'm hard of hearing.

Q. Fair to say that some people develop sort of a sense of entitlement, that they're entitled to something because their friend's in office?

A. I don't know about that. I don't get involved in that part of things. I just do what is ...

Q. Do you think there might be some other people in Knott County who deserve a bridge who hadn't gotten it because maybe their politics isn't right?

A. You know what, sir --

MR. TAYLOR: No. Just answer my question.

A. I don't know.

MR. TAYLOR: Okay. That's all the questions I have.

THE WITNESS: Thank you.

THE COURT: All right. Let me see if

there are any on redirect. May this witness be finally excused? Sir, you may be excused from any further testimony in this trial.

THE WITNESS: Can I be excused to go home?

THE COURT: Yes, sir, you may.

THE WITNESS: Thank you.

[END OF REQUESTED PROCEEDINGS]

The undersigned Court Reporter hereby certifies that: (1) The foregoing 16 pages represent an accurate and complete transcription of a portion of the record of the proceedings before the United States District Court for the Eastern District of Kentucky at Pikeville before the Honorable Gregory F. Van Tatenhove, presiding, in the matter of United States of America vs. Randall Clinton Thompson, John Mac Combs, Phillip G. Champion, and Ronnie Adams, and (2), these pages constitute a copy of the transcript of the proceeding.

__________________________________

SANDY C. WILDER, RMR, CSR(IL),
COURT REPORTER