1        UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF KENTUCKY
2              EASTERN DIVISION
                AT PIKEVILLE
3        ***TRANSCRIPT FILED ELECTRONICALLY***
UNITED STATES OF AMERICA,
4                          No. 07-CR-35-GFVT
     PLAINTIFF,
5                          Pikeville, Kentucky
                           June 13, 2008
6                          4:40 p.m.
VS.
7

RANDALL CLINTON THOMPSON,
8  JOHN MAC COMBS,
   PHILLIP G. CHAMPION,
9  RONNIE ADAMS,

10     DEFENDANTS.

11              TRANSCRIPT OF TRIAL
   BEFORE GREGORY F. VAN TATENHOVE, DISTRICT JUDGE
12            VOLUME 1 OF 10 VOLUMES

13         * * * * * * * * * *

14 APPEARANCES:

15 For the Plaintiff:
                    Hon. Kenneth Taylor
16                  110 West Vine Street
                    Suite 400
17                  Lexington, Kentucky  40507-1671
                    (859) 233-2661
18
   For the Defendant
19 Randall Clinton Thompson:
                    Hon. R. Kent Westberry
20                  Hon. Kristin N. Logan
                    Landrum & Shouse, LLP
21                  220 West Main Street
                    Suite 1900
22                  Louisville, Kentucky  40202-1395
                    (502) 589-7616
23
                    Hon. Terry D. Jacobs
24                  P. O. Box 991
                    Hindman, Kentucky  41822
25                  (606) 785-9876

APPEARANCES (Cont.)

For the Defendant
John Mac Combs:              Hon. Lawrence R. Webster
                            163 Main Street
                            Suite 2
                            Pikeville, Kentucky  41502
                            (606) 437-4029

For the Defendant
Phillip G. Champion:
                            Hon. Thomas L. Jensen
                            Jensen, Cessna, Benge & Webster
                            303 South Main Street
                            London, Kentucky  40741
                            (606) 878-8845

For the Defendant
Ronnie Adams:
                            Hon. Jason E. Williams
                            111 West 5th Street
                            London, Kentucky  40743-3199
                            (606) 877-5291

Court Reporter:             Sandy C. Wilder, RMR, CRR
                            8081 Perryville Road
                            Danville, Kentucky  40423-9713
                            (859) 516-4114
                            wildercaptions@kywimax.com

INDEX

Colloquy                                          4-17

Reporter's Certificate                            18

1    [IN OPEN COURT]

2    [THE CASE WAS CALLED, JURY WAS SELECTED,

3    AND THE FOLLOWING PROCEEDINGS TOOK PLACE]

4    THE COURT:  Okay.  You can be seated.  And

5    the record will reflect that the jury has exited

6    the courtroom.  I think it will be important for

7    counsel to be available at 8:30 on Monday morning

8    to take up any preliminary matters that we need to

9    do at that time.  I will address any preliminary

10   matters that we think we need to address before we

11   recess for the weekend, but I would anticipate that

12   we would begin with opening statements as close to

13   9:00 on Monday as we could.

14          I think there's three kind of outstanding

15   kind of evidentiary issues that are under

16   advisement and consideration that need to be

17   resolved.  One of them deals with the using the

18   videotape of the news story.  I think we've had

19   some technical difficulties.  And let me get a

20   status of whether you have a version that is ready

21   to be considered, or whether you need kind of a

22   preliminary ruling on that as you prepare for your

23   case on Monday.

24          MR. TAYLOR:  I don't plan to tell the jury

25   that I'm going to play a tape in my opening

statement, so that doesn't have to be resolved by
my opening statement.  I may say that Judge
Thompson said to the press something, but whether
or not it's in that form or not, I'm not going to
address in the opening statement.  I think we've
decided that the problem we had at the time we were
playing it last was that while Marc was holding
his -- holding the microphone up to the laptop, he
accidentally hit the off button on the microphone,
and that's why it went dead all of a sudden.  So
we're going to practice that during some down time,
and if we can train him enough, we think it will
work that way and it will be audible and
understandable.

THE COURT:  Okay.  I do think there's
still an issue of what portion of that, if any,
would be appropriate to play.  That issue's still
outstanding, so ...

MR. TAYLOR:  The only two portions we're
going to play is the judge answering the two
questions about the --

MR. WESTBERRY:  And, Judge, we want to
think about that more over the weekend.  If I'm
hearing you right, perhaps we could find some
authority that we think might be helpful, we could

1    submit that to you Monday morning at 8:30?

2         THE COURT:  You certainly could.  The one

3    thing I'm sensitive to is the logistical time

4    that's needed in order to make any edits that would

5    need to be made, consistent with my ruling in terms

6    of changing that at all.  And so we just want to --

7    we want to resolve that as early as we can on

8    Monday, so that any changes that might need to be

9    made -- I'm not suggesting necessarily they are,

10   and -- but I'd be happy to look at any authority

11   that you'd want to provide.

12         MR. WESTBERRY:  Thank you.

13         MR. TAYLOR:  One of the things that

14   Ms. Brock was going to do was make a transcript of

15   that; is that correct?  So hopefully, we could have

16   that to consider when you want to decide that.

17         THE COURT:  Right.  I think there's also

18   the Fifth Amendment issue that's still outstanding

19   as relates to the testimony of Mr. Dobson.  I think

20   that that's something that we'll need to take up

21   next week.  And we can talk Monday morning in terms

22   of the timing and having Mr. Hibbard and Mr. Dobson

23   available in order to address that.

24         MR. WESTBERRY:  We were going to look at a

25   little law on that.  If we find anything, we will

1    send it to you.

2         THE COURT:  I will encourage you to do

3    that.  I don't necessarily require briefing over

4    the weekend on these issues.  My general order has

5    the chambers email account, to the extent that

6    Counsel wanted to submit, as long as they were

7    exchanging the citations with all parties willing,

8    you're certainly free to submit a citation over the

9    weekend, and we can review it and we can access it

10   over the weekend.

11        MR. WESTBERRY:  Thank you.

12        THE COURT:  The third evidentiary issue

13   that's kind of pending out there relates to the

14   testimony of the auditor, or the person from the

15   auditor's office and the auditor report.  And

16   again, I think we can address that first thing on

17   Monday morning before opening statements.  I don't

18   think that is any -- I think you could call someone

19   from the auditor's office certainly to testify.

20        I think one of the things I'm still

21   considering and wrestling with is the

22   appropriateness then of introducing that report as

23   well.  And so I want to just flag that for you.

24   I'm not ruling on it yet; I haven't decided, but in

25   fairness, as you prepare your opening, I wanted you

1   to be kind of aware of the issue that I'm focusing

2   on, still looking at the case law as it relates to

3   that.

4            MR. TAYLOR:  Of course, we're also seeking

5   to introduce Judge Thompson's response to the

6   report.

7            THE COURT:  And you're talking about the

8   response that's included within the context of the

9   report, and that's certainly a factor I've been

10  considering, and his specific response.

11           MR. WESTBERRY:  Sure.  Thank you.  One

12  thing I always ask, and he's not entitled to, or

13  what I'm about to ask is -- I think I understand.

14  He's contemplating starting off with some witnesses

15  from an accounting firm that was engaged by the

16  state auditor, perhaps the people related to that.

17  I ask, and if we tend to ask the night before so we

18  can do our own planning, I don't anticipate him

19  telling me four days out because he may not even

20  know, but I'll ask anyone if he can help us for

21  probably Monday afternoon, it sounds like

22  realistically.

23           THE COURT:  I think that's right.  We've

24  got about two and a half hours, three hours of

25  opening statements.  We'll certainly get to the

1    beginning of presentation on Monday afternoon.

2         MR. TAYLOR:  My plan right now is to start

3    with someone from the auditor's office, or Sheri

4    Simon.  I'm going to look this weekend and make a

5    final decision on what order I'm going to put the

6    witnesses in, but that's where I'm going to start,

7    with the audit.  And then I expect to go into some

8    paving and graveling on the ground, people who

9    received it.

10         MR. WESTBERRY:  Okay.  And I don't think

11    you have the Jencks for Ms. Simon.  Obviously, if a

12    report comes in in that form from the state

13    auditor, I noticed some names were mentioned.

14         MR. TAYLOR:  That's correct.

15         THE COURT:  Okay.  Let me just see if

16    there are any other housekeeping matters?

17         MR. TAYLOR:  I should have raised this

18    yesterday, and I forgot, and -- but in the interest

19    of avoiding unnecessary recesses during trial, I

20    want to raise this issue now and make a request on

21    the defense.  I know from discussing this case with

22    them, they have hired an investigator whose name is

23    Miller, Robert Miller?

24         MR. WESTBERRY:  That's correct.

25         MR. TAYLOR:  And I know he's gone behind

1 | our investigation and interviewed probably most of
2 | our witnesses.  And I know he took a recorder with
3 | him and took two or three recorded statements.  I
4 | also know from talking with them that the way those
5 | statements, which I haven't heard, are
6 | characterized, is inconsistent with some of my
7 | witnesses's statements to the grand jury, and
8 | otherwise -- and I don't know if that's just
9 | because of the way it's characterized at the
10 | meeting I was at or if they are truly inconsistent;
11 | I don't know.  I think it might be the former, not
12 | the latter.  Either way, I expect during the trial
13 | we're going to hear cross-examination of witnesses
14 | for the Government to the effect of, Well, isn't it
15 | true that on such-and-such a date, you told
16 | Mr. Miller something different?  Isn't it true you
17 | told him "X"?  Isn't it true you told him "Y"?  And
18 | I'm entitled then at that point to get the
19 | statement.  Under Rule 613 it says examining
20 | witnesses's concerning prior statements.  In
21 | examining a witness concerning a prior statement
22 | made by the witness, whether written or not, the
23 | statement need not be shown or its contents
24 | disclosed to the witness at that time, but on
25 | request, the same shall be shown or disclosed to

1    opposing counsel.

2           Also implicated is the extrinsic evidence

3    of a prior inconsistent evidence by a witness is

4    admissible unless the witness is afforded an

5    opportunity to explain or deny the same, and the

6    opposite party is afforded an opportunity to

7    interrogate the witness thereon.

8           So in continuing with my scenario, I

9    expect that if the witness argues with the

10   characterization or denies having said that,

11   they're going to want to put Miller on later and

12   prove with extrinsic evidence the other statement.

13   Consequently, they -- and I'm sure they will lay a

14   foundation of confronting him with the prior

15   statement and giving him an opportunity to explain

16   it.  I need to be in that loop so that if it is

17   mischaracterized, either intentionally or just

18   because of the bias of the questioner, I can then

19   come back and try to straighten up and rationalize

20   or reconcile the two statements.  If I haven't

21   listened to them before this all starts

22   transpiring, I will have to ask for a recess to sit

23   down, plug up a tape recorder or laptop and listen

24   to the whole statement.  I'm asking for advance,

25   much like they did, Jencks.  I'm asking for reverse

Jencks for any, what they might consider or
anticipate in advance would be a possible use of
these statements for cross-examination.

THE COURT: Okay. I'm not aware of the
authority for reverse Jencks information, but it
does seem to make some sense in terms of the
efficient administration of this trial.

So, Mr. Westberry, let me see if you're in
favor of efficient administration of this trial.

MR. WESTBERRY: I'm always in favor of
efficient administration of trial. I think he's
probably entitled to -- we don't have them
transcribed, had not contemplated transcribing
them. They are audio recordings, much like what's
given us in the past, quite voluminous.

MR. WEBSTER: May I confer with counsel?

THE COURT: You may.

MR. WESTBERRY: Excuse me. We talked
among the defense counsel, and I think we'd rather
take it on a witness-by-witness basis. We don't
even know who these witnesses are going to be in
advance, and at this point to, you know, to make a
wholesale disclosure of all of these audio
recordings, I do think we will try to work
efficiently.

1        THE COURT:  Yes, sir.

2        MR. WESTBERRY:  We're not going to just

3 give it to him and say with the anticipation you're

4 going to have to recess court for a period of time.

5        THE COURT:  Right.  And I think

6 Mr. Taylor's concerns can be addressed when you

7 simply get an advance notice of avoiding a

8 situation where the witness is on the stand, the

9 witness has testified, and it's really only at that

10 point then that Mr. Taylor, you know, gets an

11 audio, then we are going to then have to recess.

12        So some advance notice with regard to that

13 as you see when the witness is coming and require

14 Mr. Taylor get some sense of kind of how witnesses

15 are going to unfold to know whether or not

16 they're -- these are counter-audio interviews that

17 you need to review.

18        So if I'm hearing you correctly,

19 Mr. Westberry, you're willing to give some advance

20 --

21        MR. WESTBERRY:  Yes, when we get an idea,

22 yes, sir.

23        THE COURT:  Mr. Taylor, does that address

24 your concern?

25        MR. TAYLOR:  It acknowledges my concern.

1  I don't know that it addresses my concern.  My

2  concern is waste of time, and if I have to ask for

3  a recess, I'll ask for a recess.

4      THE COURT:  Well, you will get it under

5  that circumstance, but I think we can avoid a lot

6  of that, so nobody's advantaged to kind of have

7  these, you know, plotting breaks.  Mr. Jensen?

8      MR. JENSEN:  Judge, the only point I'd

9  like to make on this, and I don't, from my

10  standpoint, and I don't have the investigation;

11  Mr. Westberry will make that decision, but I would

12  think that it will be in some orderly manner, and

13  Mr. Taylor even tells us who the witness is and

14  make sure that we have the Jencks material first

15  because I don't know if we have all the Jencks and

16  302's that we were talking about the other day.  If

17  you'll provide that to us and who the witnesses are

18  going to be a day in advance or something, then I

19  think that --

20      MR. TAYLOR:  I think that -- yeah, I mean,

21  you have 11 witnesses right now.

22      MR. JENSEN:  And I don't know who you're

23  going to call Monday.  You're saying an auditor.  I

24  don't know if I have anything about the auditor,

25  other than an audit report.

1          MR. TAYLOR:  Right.

2          MR. JENSEN:  But if -- I would think that

3     this is something we should be able to agree to

4     ourselves, if you provide it to us and tell us the

5     order you're doing it in, and I think that that

6     could be arranged.  I don't think anybody has any

7     problem with that, but we have to know where you're

8     going to.  And I don't know if you're willing to

9     divulge what you're doing, if you want to tell us

10    who you're going to call Monday or anticipate, I

11    think we can make arrangements.

12         MR. TAYLOR:  I haven't decided that

13    completely, but I will give you some idea.

14         THE COURT:  Okay.  I'd ask that you do

15    confer on that.  Good communication, I think, can

16    go a long way to avoiding the kind of delays which

17    I think you're right to bring to the Court's

18    attention.  I'd be very concerned if we get into

19    that pattern that you've described.

20         All right, Counsel.  Ladies and gentlemen,

21    let me see if there are any other matters that we

22    need to discuss.

23         MR. WILLIAMS:  Your Honor, there was one

24    other issue.  I discussed with Mr. Taylor earlier

25    an evidentiary issue that I think we have an

1   agreement on which will be in the nature of a
2   motion in limine, but continues to involve a
3   witness.  And I'm not sure when Mr. Taylor plans on
4   calling him, but his name is Ralph Dyer.  But in
5   the Jencks materials that was disclosed, there were
6   claims made about my client, Mr. Adams, that are
7   totally irrelevant to these matters involving the
8   word drugs and that type of thing.  And if I
9   understand Mr. Taylor correctly, he will admonish
10  that witness not to get into those issues or
11  discuss them from the witness stand.
12          MR. TAYLOR:  Well, what I told them was
13  remind me as the witness is walking to the stand,
14  or shortly before he's walking to the stand because
15  I'll forget.
16          MR. WILLIAMS:  I will.
17          MR. TAYLOR:  So if you want me to give him
18  a little side bar -- because I have a lot of
19  witnesses, and if I have special instructions with
20  each one, I'll forget them all.
21          THE COURT:  I think that's a fair way to
22  operate, and I appreciate Counsel working that out.
23          MR. WILLIAMS:  Thank you, Your Honor.
24          THE COURT:  All right.  Let me see if
25  there are any other matters we need to take up this

1   evening.

2          All right.  Well, I hope everyone has a

3   good and safe weekend.  We'll stand in recess until

4   8:30.

5          [ADJOURNMENT - 4:55 p.m.]

6                  *  *  *  *  *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    The undersigned Court Reporter hereby

2    certifies that:  (1) The foregoing 17 pages

3    represent an accurate and complete transcription of

4    a portion of the record of the proceedings before

5    the United States District Court for the Eastern

6    District of Kentucky at Lexington before the

7    Honorable Gregory F. Van Tatenhove, presiding, in

8    the matter of United States of America vs. Randall

9    Clinton Thompson, John Mac Combs, Phillip G.

10   Champion, and Ronnie Adams, and (2), these pages

11   constitute an original of the transcript of the

12   proceeding.

13

14          */s/ Sandy C. Wilder*

15          SANDY C. WILDER, RMR, CRR,

16          COURT REPORTER

17

18

19

20

21

22

23

24

25